LOWE, J.,
— This is an equity proceeding in which plaintiff, Frank B. Mogavero, seeks to set aside and render null and void a deed conveying premises 1404 Remington Road, Lower Merion Township, this county, and likewise the title transfer to the family Oldsmobile automobile. The transferee in each instance was defendant, Genevieve F. Mogavero, now by marriage Genevieve F. Mogavero Hennessey, formerly the wife of plaintiff.
FACTS
1. Plaintiff and defendant married April 29, 1954, and shortly thereafter plaintiff began an engineering career with the General Electric Company.
2. In January 1968, plaintiff was notified by his employer at its Valley Forge facility that he was to be discharged.
3. In accordance with established policy of the General Electric Company, plaintiff’s professional qualifications were circulated among other of the employer’s plants to determine if any one or more could profit by plaintiff’s skills. Three offered plaintiff employment; one in Syracuse, N. Y., one in Schenectady, N. Y., and one in Lynchburg, Va. Additionally, plaintiff was offered employment by the Berilco Company of Reading, Pa.
4. After extended discussions with his wife, defendant herein, and motivated exclusively by his family’s best interests, plaintiff elected to accept an offered *163 position in the Gas Turbine Division of the General Electric Company’s Schenectady, N. Y., plant.
5. Plaintiff and defendant mutually decided that plaintiff would commute between the plant at Schenectady and the family home at 603 Brookside Road, St. Davids, on weekends until the end of June 1968, in order that the parties’ three young children could finish the school term where then enrolled.
6. Plaintiff’s employment at Schenectady began March 11, 1968, and upon his return to St. Davids the following weekend was deliberately misinformed by defendant they could avoid substantial New York State income taxes by transferring title to premises 1404 Remington Road, Lower Merion Township, this county, to her name alone. At that time, the said premises were titled in the names of plaintiff and defendant as tenants by the entireties, and were tenanted by defendant’s parents.
7. Plaintiff was skeptical of the legitimacy and the propriety of the proposal, but had no cause to doubt his wife’s integrity or sagacity, because his frequent and extended travels had necessitated her management of the family’s finances.
8. Previous to March 1968, defendant had managed the family’s financial affairs with remarkable competence. When advancing the proposal concerning transfer of title to the Remington Road property, defendant represented to plaintiff that the suggested arrangement was recommended to her by an employe of the bank where they maintained an account. This was a deliberate and intentional falsehood.
9. When plaintiff returned to St. Davids the following weekend, a prepared deed ostensibly designed to accomplish the intended purpose was presented to him for execution.
10. Reluctantly, plaintiff executed the proffered *164 deed on March 23, 1968, for the nominal consideration of one dollar. Plaintiff, at this time, likewise executed a transfer of the family Oldsmobile automobile to defendant upon the representation that insurance rates and license fees would be more favorable were the same titled in the name of a Pennsylvania resident.
11. Subsequently, reservations were made for plaintiff and defendant at the Holiday Inn, Schenectady, for the week following Independence Day that the couple might seek out a new home in the area.
12. Plaintiff again returned to St. Davids on July 3, 1968. He observed that rugs, carpeting and framed pictures were missing. Upon inquiry, defendant explained that these items had been sent out for cleaning and packing in preparation for their shipment to Schenectady.
13. At the breakfast table on Independence Day, Thursday, July 4, 1968, defendant, without advance notice informed plaintiff that she no longer loved him and that she was separating herself from him.
14. This announcement so unnerved plaintiff that he required immediate medical attention for nervous shock. The Holiday Inn reservations were cancelled.
15. Plaintiff pleaded with defendant to reconsider her decision, and then returned to his employment in Schenectady.
16. Plaintiff’s mental and emotional state precluded meaningful employment. Consequently, plaintiff returned to St. Davids the following Tuesday at which time the impact of the previous week’s events prompted him to point a gun at defendant and to threaten her life. Unable to carry out his threat, plaintiff then handed the weapon to his wife and asked her to shoot him.
*165 17. Thereafter, having regained his composure, plaintiff demanded a reconveyance of the Remington Road property and of the Oldsmobile to him. Defendant refused.
18. In May 1968, the St. Davids property was sold, and plaintiff and defendant each received one-half the net proceeds of the settlement concluded August 5, 1968.
19. Plaintiff and defendant were divorced on June 6, 1969, and defendant married one Sullivan W. Hennessey on July 8, 1969.
20. On July 9, 1969, defendant, Genevieve F. Mogavero Hennessey conveyed title to the Remington Road property from herself to herself and Sullivan W. Hennessey as tenants by the entireties. Defendant likewise transferred title to the Oldsmobile to Sullivan W. Hennessey.
DISCUSSION
The sequence of deceitful events which marked the defeasance of this once happy marriage occurred in such close and patterned proximity as to render the conclusion inescapable that defendant deliberately and intentionally defrauded plaintiff. Regarding the critical events of the spring and summer of 1968, plaintiff, Frank B. Mogavero, placed understandable and justifiable reliance in his wife of nearly a decade and a half, who had theretofore well and honestly managed the family’s financial affairs, claimed reliance upon the advices of the family’s banker, and evidenced the usual domestic solicitudes. That defendant was engaged upon a diabolical scheme, and working meanwhile at cross-purposes to those of her husband, is apparent upon the most cursory examination. The fraud inherent in this infamous conduct renders the transfers null and void.
Transactions between husband and wife are watched *166 with extreme jealousy. If there is the slightest suggestion of undue influence or unfair advantage, redress will be given the injured spouse: Shapiro v. Shapiro, 424 Pa. 120 (1966). One who fraudulently makes a misrepresentation of fact by positive assertions, acts or artifices calculated to deceive, and the purpose of which is to induce another to act or refrain from acting in reliance thereon in a business transaction, is liable to the other for the harm caused him by his justifiable reliance upon the misrepresentation: Borelli et ux. v. Barthel, 205 Pa. Superior Ct. 442 (1965). Restatement, Torts, §525.
“As a general rule, fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether by direct falsehood or innuendo, by speech or silence, word of mouth or look or gesture. It is any artifice by which a person is deceived to his disadvantage”: Wiley v. Wirebelauer, 116 N.J. Eq. 391, 174 Atl. 20, 23 (1934). Quoted with approval in Thorne’s Estate, 344 Pa. 503, 511 (1942), and in Phillips Adoption, 12 D. & C. 2d 387, 400 (1957).
“To summarize, — there must be (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result”: Neuman v. Corn Exchange National Bank & Trust Co., 356 Pa. 442, 450 (1947). Quoted with approval in Borelli et ux. v. Barthel, supra, 445. The utterance is no less fraudulent where it is made recklessly without knowledge of its truth: Connelly v. Weber, 22 D. & C. 2d 454 (1959). Restatement, Torts, §526.
There is not the remotest doubt that defendant was *167 the architect of a well-designed and carefully-conceived plan calculated to deprive plaintiff of property which rightfully belonged to him. “It scarcely seems necessary at this late jurisprudential hour in the day of stare decisis to cite cases to certify that fraud taints with illegality and invalidity anything its evil shadow darkens. Nor can there be any question of the right of a court to set aside any contract which is founded on fraud. This is as fundamental and solidly established as the foundations of the courthouse”: Iacoponi v. Plisko, 412 Pa. 576, 581 (1963).*
Where a husband transfers property to his wife without consideration, there is a presumption that a gift was intended. To rebut that presumption and establish a resulting trust in his favor, the husband must support his claim by clear, explicit and unequivocal, though not necessarily uncontradicted, evidence: Shapiro v. Shapiro, supra. Though it is true, nominal consideration of one dollar passed from defendant to plaintiff, the situation can and should be likened to that in which no consideration passed between the parties. Plaintiff has clearly rebutted any presumption of a gift to defendant of the Remington Road property or of the automobile. Contrariwise, it is evident that under no circumstances would plaintiff have consented to the transfer for any reason whatsoever excepting the tax economies promised by defendant. At no time has defendant alleged that these transfers were gifts from plaintiff.
A constructive trust has been defined as a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that *168 "his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property: Truver v. Kennedy, 425 Pa. 294 (1967); Chambers v. Chambers, 406 Pa. 50 (1962). “Constructive trusts are trusts not created by words expressed or implied, evincing an intention to create a trust, but by the construction of equity, in order to satisfy the demands of justice”: Fox v. Fox, 125 Pa. Superior Ct. 541, 547 (1937). Quoted with approval in Philadelphia v. Mancini, 431 Pa. 355, 365 (1968). “As Judge (later Justice) Cardozo, speaking of the purpose of a constructive trust, said, in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 386-389, 122 N.E. 378, 381, 381, (1919): ‘A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee ... A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief’ ”: Turver v. Kennedy, supra, 305.
A constructive trust may arise where there is a breach of a confidential relationship which lies at the heart of a transaction, or it may result where fraud or misrepresentation are present: Restatement (2d) Trusts, §44 l(a)(b). Whenever a confidential relationship exists and is abused, the law will charge a party who obtained title to property pursuant to such abuse with a constructive trust: Silver v. Silver, 421 Pa. 533 (1966). A confidential relationship is not limited to any particular association of parties, but exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he (she) *169 will act in good faith for the other’s interest: Foster v. Schmitt, 429 Pa. 102 (1968). It is apparent defendant occupied such a confidential position with respect to plaintiff as would inspire his confidence that she would act in good faith and in his best interests. The exigencies of his job required that plaintiff trust his wife with their financial matters.
Mr. Justice Jones, in Shapiro v. Shapiro, supra, 128, observed:
“The instant record portrays not simply the normal display of confidence of a wife in her husband but of a wife who trusted to the extreme her husband in handling her business affairs and in the conduct of commercial transactions . . . The chancellor found — with evidentiary basis — that she allowed the husband to use and supervise her property because she relied on his business judgment, honesty and integrity and placed her faith in him as her agent and fiduciary.”
In this controversy, the converse is true. Frank B. Mogavero relied entirely upon his wife’s advice and judgment in handling the couple’s business affairs only to discover that she calculatingly deceived and defrauded him. This court has no alternative than to declare the subject transactions null and void.
DECREE NISI
And now, June 26, 1970, the deed of indenture dated March 23, 1968, and recorded in the Office for the Recording of Deeds in and for Montgomery County, Pa., in Deed Book No. 3507, page 956, et seq., on April 17, 1968, is declared null and viod, and the transfer of the Oldsmobile automobile of even date is likewise declared to be null and void, and Genevieve F. Mogavero Hennessey is declared to be a trustee ex maleficio of 1404 Remington Road, Lower Merion *170 Township, this county, and of the Oldsmobile automobile, holding the same for the benefit of plaintiff, Frank B. Mogavero, as his interest may appear as a tenant by the entirety subject to the subsequent divorce of plaintiff and defendant.

 The writer expressly exempts the Sandy Street Court House Annex.