## Silver *v.* Silver, Appellant.

534

Argued January 13, 1966. Before Bell, C. J., Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

Lee B. Sacks, with him Samuel I. Sacks, for appellant.

*Sidney E. Herold,* for appellee.

Opinion by Mr. Justice Roberts, May 24, 1966:

This appeal arises from a suit in equity instituted by Esther Silver against her son, Aaron Silver, and the estate of her deceased son, Jack Silver, seeking to have a constructive trust imposed upon certain realty allegedly transferred to the co-defendants subject to an oral promise to reconvey the property upon request.

The facts, as found by the chancellor and supported by the record,[1] establish that in May of 1952, Mrs. Silver, a widow, was the sole owner of the property here in dispute. Intending to remarry, and fearful that the property might pass to the heirs of her husband-to-be rather than to her own children, she deeded the property to two of her sons,[2] without consideration, one week prior to her marriage in June of 1952. Although the deed was absolute on its face, and no written agreement or memorandum made, it was orally agreed that the property would continue to belong to Mrs. Silver, and that the two sons whose names appeared on the deed would reconvey the property to her whenever she requested.

In 1958, Mrs. Silver was again widowed, but it was not until after the death of her son Jack, in 1963, that she requested the return of the property in accordance with the oral promise to reconvey. However, the administratrix of the estate of Jack Silver denied knowledge of such a promise and refused to reconvey the property. Mrs. Silver then instituted the present suit

---

[1] Our review clearly establishes that there is adequate evidence to support the findings of the chancellor, and we therefore accept them as binding. See *DePaul v. Melrose Country Club*, 418 Pa. 611, 613, 213 A. 2d 270, 271 (1965) ; *Schwartz v. Urban Redevelopment Auth.*, 416 Pa. 503, 508, 206 A. 2d 789, 791 (1965).

[2] Although Mrs. Silver had five children, it was agreed that the deed would only contain the names of Jack and Aaron.

in equity. After hearing, the chancellor concluded that the facts warranted the imposition of a constructive trust, and entered a decree nisi directing that the property be reconveyed to plaintiff. Only the administratrix filed exceptions to this adjudication, the other son, Aaron, having admitted the oral promise to reconvey and having expressed his willingness to comply with the order. Following argument before the court en banc, the exceptions were dismissed and the decree made final. This appeal by the administratrix followed.

Appellant first contends that the court erred in imposing a constructive trust, and that, if such a trust were not imposed, the Statute of Frauds, Act of April 22, 1856, P. L. 532, 33 P.S. §2,[3] would preclude the enforcement of the oral promise to reconvey. It is clear, however, that if the chancellor was correct in imposing a constructive trust, the Statute of Frauds would not be operative in this case, since a constructive trust, being implied by law, is expressly excluded from the operation of the Statute. *Metzger v. Metzger*, 338 Pa. 564, 14 A. 2d 285 (1940); *Hatcher v. Hatcher*, 264 Pa. 105, 107 Atl. 660 (1919); *McCloskey v. McCloskey*, 205 Pa. 491, 55 Atl. 180 (1903); *Seichrist's Appeal*, 66 Pa. 237 (1871). The first issue to be considered, therefore, is whether the facts as found by the chancellor justify the imposition of a constructive trust.

---

[3] The Statute of Frauds provides: "All declarations or creations of trusts or confidences of any lands, tenements or hereditaments, and all grants and assignments thereof, shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else to be void: Provided, That where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law, then and in every such case such trust or confidence shall be of the like force and effect as if this act had not been passed." Act of April 22, 1856, P. L. 532, §4, 33 P.S. §2.

It is settled that where property is conveyed to one in a confidential relationship to the transferor, subject to a promise to reconvey which is subsequently breached, equity will intervene by imposing a constructive trust to prevent the unjust enrichment of one so abusing a confidential relationship. *Metzger v. Metzger,* supra; *Hatcher v. Hatcher,* supra; Restatement 2d, Trusts, §44 (1959); Restatement, Restitution, §160 (1937); Bogert, Trusts & Trustees §471 (2d ed. 1960); see 4 Scott, Trusts §462.1 (2d ed. 1956). It is necessary that both a confidential relationship and reliance upon a promise to reconvey induced by that relationship be shown.[4] Our review convinces us that the chancellor correctly concluded, on the basis of his factual findings, that these elements were present in this case.

Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship is not confined to a particular association of parties but exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest. *Stewart v. Hooks,* 372 Pa. 542, 547, 94 A. 2d 756, 758 (1953); *Brunier v. Stanert,* 369 Pa. 178, 185, 85 A. 2d 130, 134 (1952). The record establishes that Jack and Aaron Silver had such a relationship with their mother.

While the mere fact of a mother-son relationship, without more, will not support a finding of a confiden-

---

[4] In discussing this point in *Metzger v. Metzger,* 338 Pa. 564, 568, 14 A. 2d 285, 287 (1940), the Court stated, "these cases involve, as Mr. Justice CARDOZO pointed out in the leading case of **Sinclair v. Purdy, 235 N.Y. 245,** quoting from **Wood v. Rabe, 96 N.Y. 414,** 'a confidence induced, not by the bare promise of another, but by the bare promise and the confidential relation conjoined'."

tial relationship,[5] it is a factor which cannot be ignored and which, under the circumstances of this case, colors the nature of the disputed transaction. Cf. *Metzger v. Metzger,* supra; *Hatcher v. Hatcher,* supra. Mrs. Silver was a widow. Prior to the disputed conveyance, she took no active part in the management of this property, but rather relied upon Jack and Aaron to collect the rent, to pay the taxes, to manage the property and to remit to her whatever excess rent money remained after these obligations had been met.

Moreover, at the time the disputed conveyance occurred, Mrs. Silver was deeply concerned about the ultimate disposition of her property due to her impending marriage. Under these circumstances, it was only natural that she turn to her sons, both of whom she trusted and relied upon, for guidance and advice. And it was at the suggestion of her sons that the property was placed in their names.

We must therefore conclude, as did the chancellor and the court en banc, that the natural confidence inspired by the mother-son relationship, along with the evidence that the mother depended upon her sons for advice and customarily abided by their decisions in matters of this sort, as well as the particular state of mind of Mrs. Silver at the time of the conveyance, adequately establishes that a confidential relationship existed. It must also be concluded that it was this relationship which led Mrs. Silver to rely upon the promise of her sons that they would reconvey the property upon request. When this promise was breached, equity quite properly imposed a constructive trust and ordered the property reconveyed to plaintiff.

Appellant asserts in the alternative that even if elements justifying the imposition of a constructive trust are here present, an action seeking to have such a trust

---

[5] See, e.g., *Gerner v. Kespelher*, 351 Pa. 649, 41 A. 2d 860 (1945).

imposed is barred by the statute of limitations contained in the Act of April 22, 1856, P. L. 532, §6, 12 P.S. §83, which provides: "No . . . action [shall] be maintained . . . to enforce, any implied . . . trust as to realty, but within five years after such . . . trust accrued . . . ."

Appellant contends that the trust "accrued" at the time of the original conveyance in 1952. Thus, it is argued that the five year period during which this action could be maintained expired in 1957. Although authority for the predicate of this argument, i.e., that the trust "accrues" at the time the property is conveyed, may be found in *Gast v. Engel,* 369 Pa. 137, 141, 85 A. 2d 403, 405 (1952), we are not persuaded by that reasoning.

One who stands in a confidential relationship to a grantor does not become a trustee ex maleficio immediately upon the transfer of property to him. This fiduciary obligation is imposed only upon the breach of his promise to reconvey the property. *Metzger v. Metzger,* supra at 569, 14 A. 2d at 288; *Hatcher v. Hatcher,* supra at 109, 107 Atl. at 661. It is at this point that equity, in order to prevent the unjust enrichment which would result from such breach, will construct a trust and impose the duty to return the property to the grantor. Since no constructive trust exists until the grantee breaches his promise to reconvey, it is our view that the statute could not begin to run until that time, or until the grantor should reasonably know of the grantee's wrongful retention of the property. By starting the statute of limitations running at that time, rather than at the time the conveyance is first made, one enjoying a confidential relationship will not be able to profit by concealing, for a five year period, his intention to dishonor his promise to reconvey property entrusted to him. Thus, conduct which starts the statute running on actions to enforce constructive

trusts arising from the abuse of a confidential relationship will be made consistent with conduct which commences the statute of limitations for actions to enforce constructive trusts arising from actual fraud.[6] In addition, the view we here take is in line with that which prevails in other jurisdictions.[7]

In the present case, no demand was made for the return of the property during the lifetime of the deceased son, and the promise to reconvey, therefore, was not breached until his estate refused to convey the property to plaintiff after his death in 1963. The present action is thus well within the five year statutory period and the defense of the statute of limitations was properly rejected.

We have carefully considered the other contentions raised by appellant and find them to be equally without merit.

Decree affirmed. Each party to pay own costs.

Mr. Justice COHEN concurs in the result.

Mr. Chief Justice BELL and Mr. Justice EAGEN dissent.

---

[6] The Act of April 22, 1856, P. L. 532, §6, 12 P.S. §83, contains the following proviso: "Provided, That as to any one affected with a trust, by reason of his fraud, the said limitation shall begin to run only from the discovery thereof, or when, by reasonable diligence, the party defrauded might have discovered the same. . . ."

[7] See Comments, The Confidential Relationship Theory of Constructive Trusts—An Exception to the Statute of Frauds, 29 Fordham L. Rev. 561, p. 570, n.64 (1961).