375 A.2d 772

**Dorothy A. MORELAND, Appellant,**

v.

**Michael J. METROVICH, Executor of the Estate of Michael Metrovich, Deceased.**

Superior Court of Pennsylvania.

Argued April 14, 1977.

Decided June 29, 1977.

90

Michael J. Seymour, Pittsburgh, for appellant.

John Sughrue and Samuel R. Sciullo, Pittsburgh, submitted a brief for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred in refusing to impress a constructive trust on residential property which she had transferred to her sister and brother-in-law. We affirm the decree of the lower court.

Spiridon P. Bubush and Marie P. Bubush, appellant's parents, owned a dwelling house at 353 Semple Street, Oakland, Pittsburgh. The Bubushes raised their two daughters at this site. In 1969, Spiridon Bubush died, and in 1970, Marie Bubush died. Appellant and her older sister inherited the property and became tenants in common of the family

home. At the time of Mrs. Bubush's death, appellant's daughter and family lived in the home. In May, 1971, appellant's daughter and family moved out of the house, and in July 1971, appellant's sister and brother-in-law, Alice and Michael Metrovich, moved into the house. On July 20, 1971, appellant conveyed her undivided one-half interest in the property to her sister and brother-in-law in fee simple for a consideration of $1.00 and love and affection. On July 30, 1971, the Metroviches recorded the transaction. When Alice Metrovich died on April 4, 1974, her husband became the sole title-holder to the Semple Street property.

On October 18, 1974, appellant filed a complaint which requested that the Allegheny Court of Common Pleas, sitting in equity, declare and enforce a constructive trust on the Semple Street property against Michael Metrovich.[1] The complaint alleged that appellant transferred the property to her sister and brother-in-law because of an express understanding between the parties that when the Metroviches died, appellant would regain her interest in the family property. She allegedly made the transfer in order to alleviate marital strife between the Metroviches. The complaint also alleged that Michael Metrovich was attempting to sell the Semple Street property in violation of the express understanding.

On June 23, 1975, trial commenced. Appellant testified[2] as follows: she and her sister had always shared a very close relationship. They loved and trusted each other and went everywhere together. Appellant asserted that: ". . . I was the baby of the family, and I was treated as a baby all

1. After the appellant filed her complaint, Michael Metrovich died. On April 23, 1975, the lower court permitted appellant to substitute Michael J. Metrovich, executor of the estate of his father, as defendant. Michael J. Metrovich is a son of Michael Metrovich by a prior marriage; he is not related to appellant.

2. Appellee, citing the Dead Man's Act, Act of May 23, 1887, P.L. 158, § 5, cl. (e); 28 P.S. § 322, objected to the competency of appellant to testify to any discussions she had with either Mr. or Mrs. Metrovich concerning the land in dispute. The chancellor ruled that appellant could not testify to any negotiations with Michael Metrovich concerning the land. Appellant does not now challenge this ruling.

the time. And I did what [my mother and sister] would tell me to do." Appellant was, in fact, seven years younger than her sister. The Metroviches had a stormy marriage because of Mr. Metrovich's drinking problem and abusive behavior. Her sister begged appellant to transfer her undivided one-half interest in the family home so that Mr. Metrovich would stop his cruel behavior. Appellant asked for an assurance that she, or her daughter in the event of appellant's untimely demise, would recover the property upon the death of both Metroviches; [3] Mr. and Mrs. Metrovich gave her the requested assurance orally. After deliberating for sixteen months, appellant decided to make the transfer. She engaged an attorney and transferred the property in fee simple to her sister and brother-in-law.[4] The deed stated a consideration of $1.00 and love and affection. Appellant never informed her attorney that she really wanted to transfer a life estate.

Appellant introduced two documentary exhibits into evidence. Appellant stated that she found these documents when her sister, just before she died, told her to remove a strongbox from the Semple Street home. One exhibit [hereinafter exhibit no. 1] provided:

"In the event of our death; we Michael & Alice Metrovich, hereby leave our home, (The Bubush Home) located in Allegheny County at 353 Semple Street, Fourth Ward, Lot

3. Appellant's complaint alleged that the parties expressly agreed that appellant would regain her property interest after the death of the Metroviches. Implicitly, the alleged agreement provided that appellant would only regain control over an undivided one-half interest in the property. Appellant testified, however, that the parties agreed that the entire residential property would be turned over to appellant after the death of the Metroviches. The lower court permitted appellant to amend the complaint to clarify her desire to gain the entire property.

4. We note that appellant's sister never transferred any part of her undivided one-half property interest to her husband even though Mr. Metrovich allegedly insisted that the property be transferred to him. Appellant knew that her sister retained sole ownership of her undivided one-half interest, but never asked why appellant had to transfer part of her interest to Michael Metrovich when her sister refused to make a similar transfer.

& Blk # 28L188; Pittsburgh, Pa. to Dorothy Ann Moreland, sister of Alice Metrovich. In event of her death, home goes to Neice [sic] Kathleen Bellisario. Also any personal properties originally belonging to Peter and Marie Bubush. Jewelry, cut-glass, nic, nacs, etc.

"Also Alice's jelery [sic], furs, etc.

"Our property located in Cook Forest, Lot # 14, Barnett Twp., Forest County, Pa. is to be left to Michael J. Metrovich, Son, Michele, & Jennifer Metrovich, granddaughters, & Bevelary [sic] Metrovich, daughter-in-law. Not to be sold, but handed down to children, etc.

(Notarized Dec. 20, 1971.)

"Michael Metrovich
"Alice Metrovich."

Appellant testified that this document was in her sister's handwriting.

The second exhibit [hereinafter exhibit no. 2] provided:

"This house on 353 Semple St. goe's [sic] to my wife and here sister Doroty' [sic] Moroland [sic] my wife's sister. When I leave here dead or alive.

"Michael Metrovich."

Appellant asserted that this undated document bore her brother-in-law's handwriting. On cross-examination, appellant stated that she still owned two houses on Semple Street near the family homestead.

Appellant called two more witnesses. A neighbor of the Metroviches testified that Metroviches argued constantly and that Mr. Metrovich frequently became intoxicated. Appellant's daughter testified[5] that her mother and aunt: ". . . did everything together . . . They had confidence, like, in each other and they trusted each other. And my mother just believed—would believe anything my

5. Appellee objected, again citing the Dead Man's Act, supra, to the competency of appellant's daughter to testify to any discussions with the Metroviches concerning the land in dispute. The chancellor permitted appellant's daughter to testify, subject to a later decision to strike her testimony as incompetent.

aunt would tell her and my aunt reciprocated. It was like a mutual thing." In particular, appellant's daughter recalled that when her stepfather died, her aunt advised appellant to continue to operate his garage business and to refuse to sell his antique car. Appellant attempted to operate the business, but it ultimately failed.

Albert D. Mazur, an attorney, testified that appellant engaged him to prepare a deed in July, 1971. Appellant and he consulted for 45 minutes because she could not decide what she wanted to do. She expressed concern that Mr. Metrovich would continue to abuse her sister and hesitated before signing the prepared deed. Appellant, however, never indicated that she only wished to convey a life estate.

On July 9, 1975, the lower court issued a decree nisi and accompanying adjudication denying the remedy of a constructive trust. In particular, the chancellor found that appellant failed to establish the withholding of a beneficial interest at the time of the transfer of the property or a promise by the Metroviches to reconvey simultaneous with the conveyance. Moreover, the chancellor found that appellant failed to establish, as a matter of law or fact, that she and her sister shared a confidential relationship. This appeal followed a court en banc's denial of appellant's exceptions to the chancellor's findings and the entry of a final decree.

█ Appellant contends that the chancellor abused his discretion in refusing to impose a constructive trust. In *Truver v. Kennedy*, 425 Pa. 294, 229 A.2d 468 (1967), our Supreme Court recognized that the Statute of Frauds, Act of April 22, 1856, P.L. 532; 33 P.S. § 2, ordinarily bars the introduction of any evidence of an oral agreement modifying a deed which on its face transfers land in fee simple. However, our Supreme Court has adopted the Restatement of Trusts, 2nd, § 44 (1959), as an exception to the Statute of Frauds. See *Truver v. Kennedy, supra; Silver v. Silver*, 421 Pa. 533, 219 A.2d 659 (1966); *Metzger v. Metzger*, 338 Pa. 564, 14 A.2d 285 (1940). Section 44 provides, in pertinent part:

"(1) Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, as required by the Statute of Frauds, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if

"(a) the transfer was procured by fraud, duress, undue influence or mistake, or

"(b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

"(c) the transfer was made as security for an indebtedness of the transferor."

In order to impose a constructive trust pursuant to § 44, a chancellor must find "both a confidential relationship and reliance upon a promise to reconvey induced by that relationship . . .." *Silver v. Silver*, supra, 421 Pa. at 537, 219 A.2d at 661. See also *Foster v. Schmitt*, 429 Pa. 102, 239 A.2d 471 (1968); *Metzger v. Metzger*, supra.

■ A plaintiff may establish a confidential relationship as a matter of law or as a matter of fact. As our Supreme Court stated in *Truver v. Kennedy*, supra, 425 Pa. at 306, 229 A.2d at 474: "[A confidential relationship] may exist *as a matter of law* in certain recognized fiduciary relations, as in the case of trustee and cestui que trust, attorney and client, and guardian and ward. It may also exist as a matter of fact wherever one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on the one side, or weakness, dependence or justifiable trust, on the other." See also *Butler v. Butler*, 464 Pa. 522, 347 A.2d 477 (1975); *Brunier v. Stanert*, 369 Pa. 178, 85 A.2d 130 (1952). The existence of a close family relationship, such as sister to sister, does not *per se* justify recognition of a confidential relationship. *Truver v. Kennedy*, supra; *Thompson Will*, 387 Pa. 82, 126 A.2d 740 (1956); *Stewart v. Hooks*, 372 Pa. 542, 94 A.2d 756 (1958). Instead, the plaintiff must prove the confidential relationship as a matter of fact. *Truver v. Kennedy, supra.*

In *Truver v. Kennedy, supra,* Lackawanna County held title to a piece of real estate, subject to a right of redemption held by three brothers and two sisters. Mrs. Kennedy persuaded her brothers and sister to transfer their interests as tenants in common to her so that she would be able to redeem the property after securing a loan. In particular, Mrs. Kennedy wrote her sister, Mrs. Truver, a series of letters guaranteeing that Mrs. Kennedy would protect the sister's equitable interest in the property. In reliance upon this promise, Mrs. Truver transferred her property interest. Mrs. Kennedy did exercise the right of redemption, but then sold some of the property without an accounting to Mrs. Truver. Mrs. Truver instituted an equity action which sought to impose a constructive trust upon the property. Our Supreme Court affirmed the chancellor's conclusion that the parties stood in a confidential relationship to one another with respect to the commonly held property and declared that a constructive trust could properly be imposed. However, the Court held that Mrs. Truver's action was barred by the statute of limitations and laches.

■ *Truver v. Kennedy, supra,* does not control the instant case. In *Truver,* plaintiff introduced multiple letters written by her sister expressly promising to protect plaintiff's interest in the property. In the case at bar, the chancellor specifically found that the Metroviches never promised that the property would be reconveyed after their deaths and that appellant intended to transfer her property interest to the Metroviches in fee simple. The record substantially supports these findings. *Chambers v. Chambers,* 406 Pa. 50, 176 A.2d 673 (1962). The chancellor properly relied upon the unconditional language employed in the deed. An attorney drafted this deed after a long consultation with appellant during which appellant never intimated that she wished to convey anything less than a fee simple. The testamentary language of exhibit no. 1, drafted six months *after* the transfer, supported an inference that the Metroviches believed that they owned the Semple Street property in fee simple. Likewise, exhibit no. 2, undated,

made no reference to a *quid pro quo* for the presumably earlier conveyance. Finally, the chancellor had the opportunity to observe appellant's demeanor and refused to credit her testimony about an agreement. *Pronzato v. Guerrina*, 400 Pa. 521, 163 A.2d 297 (1962). Because the chancellor's findings that the Metroviches made no promises and that appellant intended a fee simple transfer are adequately supported by the record, we cannot impose a constructive trust pursuant to § 44 of the Restatement of Trusts, 2nd. See *Foster v. Schmitt*, supra; *Silver v. Silver*, supra; *Metzger v. Metzger*, supra; *Gray v. Leibert*, 357 Pa. 130, 53 A.2d 132 (1947).

■   Pennsylvania case law has approved a second theory under which a constructive trust may be imposed. In *Yohe v. Yohe*, 466 Pa. 405, 411, 353 A.2d 417, 420-21 (1976), our Supreme Court stated: "The imposition of a constructive trust is an equitable remedy designed to prevent unjust enrichment. *See Restatement of Restitution* § 160 (1937); A. W. Scott, *Trusts* §§ 462, 462.1 (3d ed. 1967). A constructive trust arises '[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it   .   .   ..' Restatement of Restitution § 160 (1937);   .   .   .." This theory of constructive trusts does not require an equity court to find an intention or agreement to create a trust; instead, a court may impose a constructive trust as a remedy to prevent the unjust enrichment of one party. *Stauffer v. Stauffer*, 465 Pa. 558, 351 A.2d 236 (1976); *Buchanan v. Brentwood Federal Savings and Loan Assoc.*, 457 Pa. 135, 320 A.2d 117 (1974); *Peoples First Nat. Bank & Trust Co. v. Ratajski*, 399 Pa. 419, 160 A.2d 451 (1960).

■   In the instant case, we cannot say that the estate of Michael Metrovich has been unjustly enriched. The chancellor made a finding of fact that the Metroviches did not originally acquire the Semple Street property by making a promise that would later be broken. *Pronzato v. Guerrina*, supra. Nor did the Metroviches unfairly exercise an advan-

tage stemming from superior knowledge or influence in order to compel appellant to transfer the land. *Butler v. Butler*, supra; *Stewart v. Hooks*, supra; *Brunier v. Stanert*, supra. Instead, a compassionate sister voluntarily donated her interest in commonly held property to her sister and brother-in-law in a generous attempt to save a tempestuous and foundering marriage. We are compelled to join in the conclusion reached by the chancellor: "While we may sympathize with the [appellant] over the loss of the family home, the facts do not support [appellant's] claim for relief." Accordingly, we affirm the lower court's final decree.

Final decree affirmed.

VAN der VOORT, J., did not participate in the consideration or decision of this case.

SPAETH, J., concurs in the result.

PRICE, J., dissents.