## Hockel v. Bennicoff

C.P. of Lehigh County, No. 2012-C-0885.

*Michael C. Deshler,* for plaintiff.
*Gerald M. Barr*, for defendant.

FORD, *J.,* February 25, 2013—This case involves an unfortunate dispute among family members. The primary issue is whether the defendants, Robert W. Bennicoff Jr.

and Barbara G. Bennicoff, who are the parents of plaintiff, Lisa M. Hockel, should be compelled by the court to reconvey real estate located in Lower Milford Township, Lehigh County, to the plaintiff. After consideration of the evidence presented at the bench trial on October 10, 2012, and the applicable law, the court concludes that the several requests contained in the complaint should be denied and only one aspect of the counterclaim in regard to rental payments should be granted. I enter an order today directing these things. I first explain what happened among the parties and I then provide an analysis of the applicable law.

## Findings of Fact

1. Plaintiff, Lisa M. Hockel, is the adult daughter of defendants, Robert W. Bennicoff Jr. and Barbara G. Bennicoff.

2. By deed dated April 13, 2001, defendants conveyed to plaintiff and Keith Lee George, then her husband, a vacant 4.0576 acre parcel of land in Lower Milford Township, Lehigh County. (The deed is Exhibit P-1.)

3. Plaintiff and Mr. George conveyed a 1.989 acre portion of the parcel back to defendants by a deed dated October 4, 2002. (This deed is Exhibit P-2.) This reconveyance was done for tax advantage purposes. This left plaintiff and Mr. George with a 2.0686 acre parcel known as 1280 Wind Hill Road, Lower Milford Township. This is the property that is disputed in this litigation. In 2002, plaintiff and Mr. George built a two-story single family dwelling on the property.

4. Plaintiff and Mr. George mortgaged the disputed property for the total principal amount of approximately $212,900. (See Exhibits P-3, P-4, and P-5.)

5. Plaintiff and Mr. George experienced marital difficulties which led to their divorce on March 1, 2006.

6. In the course of distribution of their marital property, plaintiff and Mr. George had discussions with defendants as a result of which an oral agreement was reached as to the disputed real estate. Under this agreement, plaintiff and Mr. George would reconvey the disputed property to defendants in return for defendants' payment of the mortgage debt incurred by plaintiff and Mr. George on the disputed property.

7. In accord with their oral agreement, plaintiff and Mr. George reconveyed the disputed property to defendants on May 9, 2005. (See Exhibit P-7.) Defendants then satisfied the mortgage debt on the premises in the amount of about $205,000 through a new home equity loan. Defendants have maintained the disputed property since then which has included the payment of taxes and homeowner's insurance.

8. In the course of their marriage, plaintiff and Mr. George had a child, Emma Lynn George, who was born on April 7, 2001. Defendants are emotionally very close to their granddaughter, Emma. They did not and still do not want her to move from the disputed property.

9. Following the divorce, plaintiff and Emma continued to live at the disputed property in return for the payment

of a monthly rental of $700, an amount agreed between plaintiff and defendants. Mr. George moved from the property. In 2007, plaintiff married Jack Hockel who lives as the disputed property with plaintiff and Emma.

10. Plaintiff wishes to have the disputed property reconveyed to her by defendants for $205,000, the amount that defendants paid to satisfy the previous mortgages incurred by plaintiff and Mr. George. Plaintiff claims that there was an oral agreement at the time of the last (May 9, 2005) conveyance that defendants would again transfer the property to her for $205,000. Defendants agree that there was an agreement for a reconveyance; however, there was no agreement, oral or written, as to the amount to be paid for it. The parties have been unable to resolve this disagreement and it has led to a falling out among them.

11. While defendants have been generous in the various real estate transactions described herein to plaintiff, their daughter, since her marriage to Mr. George, defendants did not act as financial advisors to plaintiff or otherwise act in a secret or confidential manner to benefit plaintiff.

12. Plaintiff paid the $700 in rent through September of 2011 although some unproven rental payments were missed before then. Plaintiff has not paid rent since September of 2011. When plaintiff did not pay the October 2011 rent payment, Mr. Bennicoff sent a written demand to plaintiff for an increase in the rent from $700 per month to $1,600 per month. Plaintiff did not respond to this demand nor did she pay any rent payments from October 1, 2011, to

the present.

13. In late 2011, Mr. Bennicoff demanded that plaintiff and Mr. Hockel remove personal property from the north barn located on defendants' property or pay storage rental in the amount of $200 per month. Two months was given to do this. Plaintiff and her husband removed some of the property but did not remove other property within the two months. Thereafter defendants changed the locks on the north barn so that nothing could be removed by plaintiff and her husband.

## Discussion and Conclusions of Law

In the complaint, plaintiff asks that the court declare that defendants hold the disputed real estate in constructive trust for the plaintiff. Plaintiff wants the defendants to be ordered to reconvey the property to her for the amount of $205,000. This was the amount defendants paid at the time of plaintiff's divorce to satisfy the mortgages on the property in return for reconveyance of the disputed property to them, the defendants. Plaintiff says that these were the terms of her oral agreement with defendants.

Defendants respond that the statute of frauds, 33 P.S. § 2, requires that such an agreement in conjunction with the transfer of real estate must be in written form to be enforceable. Defendants also assert that not even an oral agreement was reached as to the terms for a reconveyance of the disputed property from them to plaintiff. While defendants expressed a willingness to reconvey the property, they say that the cost of the reconveyance is still to be determined. Also, according to defendants, an

essential requirement for the imposition of a constructive trust has not been proven, namely, that a confidential relationship existed between plaintiff and defendants. It is defendants' position that no such relationship existed.

The Pennsylvania Supreme Court has addressed the requirements for the imposition of a constructive trust on real estate among family members in *Silver v. Silver*, 421 Pa. 533, 219 A.2d 659 (1966). According to the Supreme Court, if the requirements for a constructive trust are met, the statute of frauds "would not be operative in [such a] case, since a constructive trust, being implied by law, is expressly excluded from the operation of the statute." *Id.* at 536, 219 A.2d at 661. Thus, for plaintiff to succeed in enforcing the agreement for the transfer of real estate that she alleges, she must demonstrate the existence of a constructive trust. Otherwise, the statute of frauds bars any recovery for her.

The Supreme Court explained what is necessary for a constructive trust to bring about the transfer of real estate among those in a confidential relationship:

It is settled that where property is conveyed to one in a confidential relationship to the transferor, subject to a promise to reconvey which is subsequently breached, equity will intervene by imposing a constructive trust to prevent the unjust enrichment of one so abusing a confidential relationship. [Citations omitted. It is necessary that both a confidential relationship and reliance upon a promise to reconvey induced by that relationship be shown.

*Id.* at 537, 219 A.2d at 661-62.

It is necessary to inquire if a confidential relationship existed between transferor, plaintiff and transferees, defendants. The Supreme Court explained:

Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship is not confined to a particular association of parties but exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest. [Citations omitted.]

While the mere fact of a mother-son relationship, without more, will not support a finding of a confidential relationship, it is a factor which cannot be ignored....

*Id.* at 537-38, 219 A.2d 659 at 662.

With the applicable law in mind, plaintiff's proof fails in several respects. First, she relies upon an alleged oral agreement. The crucial aspect of her allegation is that her father committed himself to transferring the disputed property back to her for the specific price of $205,000. While plaintiff has proven that there was a commitment that defendants restore the property to her, an agreed amount for that transfer has not been proven. The believable evidence presented a situation where the parties had no more than expectations, hopes and possible amounts for the future transfer. The price that plaintiff wants enforced through a constructive trust has not been proven. The

Statute of frauds need not be discussed since plaintiff has not shown even an oral agreement about the consideration to be paid.

Also, a constructive trust cannot be imposed because plaintiff has failed to demonstrate a confidential relationship between her and the defendants. Believable proof was not presented that defendants acted as plaintiff's advisors or counselors in these real estate transactions or in any other significant matters since plaintiff married Mr. George on September 7, 1996.

It is undisputed that plaintiff agreed to pay rent at $700 per month while she lived at the property. She missed some of the payments but there was no proof of amounts missed so an award cannot be made as to them. It is also undisputed that plaintiff has not paid any monthly rent since October 1, 2011. Defendants are entitled to that monthly rent from October 1, 2011, to the present and for the remaining period of plaintiff's occupancy. This is reflected in today's order. Defendants' attempt at a unilateral rent increase to $1,600 per month is ineffective. *See Trombetta v. Raymond James Financial Services, Inc.*, 907 A.2d 550 (Pa.Super. 2006) (noting that a contract modification must be agreed to by both parties). Defendants' remedy for the default is eviction, not a rent increase.

There is no award for storage fees. The $200 per month sought was a demand by defendants, without agreement by plaintiff. This demand was made after years of storage of items by plaintiff in the north barn without charge to her. Also, plaintiff removed significant items in the two

months given to her and her husband for removal. The evidence is lacking as to the efforts made by plaintiff to remove the things. Were these good faith attempts by her or not? Then, after two months, nothing could be removed because of the changing of the locks.