ZIONS FIRST NATIONAL BANK, N.A.

v.

UNITED HEALTH CLUB, INC. and CHU Liquidating Corp. and Financial Enterprises of America, Inc.

UNITED HEALTH CLUBS, INC.

v.

ZIONS FIRST NATIONAL BANK, N.A. and CHU Liquidating Corp.

Nos. 82–1275, 82–1287.

United States Court of Appeals, Third Circuit.

Argued Feb. 18, 1983.

Decided April 8, 1983.

John L. Jenkins (argued), Philadelphia, Pa., for Zions First National Bank, N.A.

Robert W. Maris (argued), Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for United Health Clubs, Inc.

Before GIBBONS, HUNTER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This appeal and cross appeal arise out of consolidated diversity actions involving a leasehold mortgage on premises at 4600 City Line Avenue, Philadelphia, Pennsylvania, occupied as a health club. In the first action Zions First National Bank, N.A. (Zions), a national bank, sought to foreclose a mortgage on the leasehold which it held as security for a debt owed by Financial Enterprises of America (FEA), and to obtain a judgment for the amount of the FEA debt. In the second action United Health Clubs, Inc. (New United), which obtained possession of the leasehold premises from FEA sought to quiet its title to the leasehold against Zions' claim of a security interest in it. An amended complaint charged Zions with defamation of New United's credit and with interference with New United's prospective business opportunities. In a non-jury trial the district court made findings of fact favorable to Zions and entered judgment in its favor for the amount of the debt. The court also entered judgment in its favor on New United's defamation of credit and business interference claims. The judgment permitted Zions to foreclose on a leasehold estate under a 1967 lease on the premises at 4600 City Line Avenue, but did not permit foreclosure on the leasehold interest created by a subsequently executed lease. The effect of the judgment is to leave New United in possession under the subsequently executed lease. Zions appeals, contending that the relief afforded with respect to foreclosure on the leasehold is inadequate. New United cross appeals, contending that no foreclosure relief should have been granted, and that the court erred in dismissing its defamation of credit and business interference claims. We hold that the court, 533 F.Supp. 1127, erred in failing to order foreclosure of the entire leasehold estate, and we reverse with a direction to do so. We affirm the judgment in Zions' favor for all relief sought by New United.

### I.

The factual background for this dispute is complex. The fee owner of the premises at 4600 City Line Avenue is 4600 City Line Corporation (City Line). City Line has mortgaged the fee interest to Germantown Savings Bank, and a provision in the fee mortgage requires the mortgagee's consent before leasing or otherwise transferring the premises to any organization having a net worth less than $350,000. On October 4, 1967, City Line leased the premises to Spa Health Clubs, Inc. (SPA). That lease was recorded on January 12, 1977. It provides that City Line may relet in the event of SPA's default in rent payments. It also provides that SPA might assign its interest without City Line's consent so long as the assignee has a net worth of at least $350,000 and assumes SPA's obligations under the lease.

SPA went into possession and commenced operating a health club in which it sold membership contracts. These contracts were assigned to FEA, a Colorado finance company, at a discount, on a full recourse basis. Under the SPA–FEA financing arrangement FEA had the right to assume the operation of SPA's health clubs. In February of 1974 SPA was experiencing financial difficulties, and FEA exercised its option to take over the operation of four SPA health clubs including that at 4600 City Line Avenue. On March 5, 1974 City Line and FEA executed an interim lease agreement pursuant to which FEA assumed SPA's obligations under the 1967 lease. The March 5, 1974 lease purported to terminate SPA's interest in the premises and to relet 4600 City Line Avenue to FEA on the same terms and conditions. FEA thereupon transferred operation of that health club to United Health Clubs, Inc. (Old United), a wholly-owned subsidiary now called CHU Liquidating Corporation. On September 13, 1974 City Line and Old United executed a new lease, backdated to March 5, 1974, containing the same terms and conditions as the 1967 City Line-SPA lease. That new lease was executed shortly after the settlement, in August of 1974, of the suit commenced by SPA against FEA and its subsidiaries to regain possession of the leasehold premises.

Pursuant to the settlement, SPA assigned all its rights, title and interest in the 1967 City Line-SPA lease to Old United. The September 13, 1974 City Line-Old United lease, backdated to March 5, 1974, was not recorded until December 22, 1977. Thus as of September 13, 1974 Old United held an assignment of SPA's 1967 lease, and a 1974 unrecorded lease on the same terms directly from the fee owner, City Line. The 1974 lease apparently was not immediately recorded because City Line had not obtained the consent of Germantown Savings Bank for its execution, and Old United feared that the first mortgagee might foreclose.

In connection with its financing business, FEA had a line of credit with Zions. Early in 1975 FEA was named a defendant in a lawsuit in the United States District Court for the District of Utah. Defense of that action seriously depleted FEA resources and caused it to fall behind on scheduled payments of principal and interest to Zions. In November of 1975 FEA executed to Zions a note for $375,000, payable on demand or on November 25, 1976. By June of 1976 FEA and Old United together owed Zions in excess of $776,000. On June 21, 1976 Old United mortgaged to Zions its interest under the 1967 lease for 4600 City Line Avenue in order to secure FEA's obligations under the 1975 demand note. In exchange for this security Zions agreed to defer the interest payments on the November 1975 note. The trial judge found as a fact that Lee Schoonmaker, Old United's President, intended that Zions have a valid lien on the entire leasehold, despite his knowledge of the existence of the separate 1974 lease. Zions both deferred interest payments and refrained from accelerating the note.

By 1976 the health club at 4600 City Line Avenue was FEA's most valuable asset, and on November 25, 1976 the note to Zions fell due. It remained unpaid, and in early December Angus Belliston, an officer of Zions, went to Philadelphia to confer with Schoonmaker. Schoonmaker proposed a plan designed to insulate the health club at 4600 City Line Avenue from a potential judgment against FEA in the Utah litigation. The plan was to form a new corporation, owned by Schoonmaker and a few other FEA stockholders, which would for full value purchase the assets of Old United, including the 4600 City Line Avenue leasehold. Schoonmaker expected Zions to lend the new corporation enough money to pay FEA's debt to Zions, and to release all FEA collateral to the new corporation. As collateral for the loan to the new corporation, Zions would take a mortgage from it on the leasehold. The new corporation would acquire FEA's accounts receivable, which could be pledged to a new lender for a working capital loan.

Zions did not agree to Schoonmaker's proposal. Shortly after the December meeting between Belliston and Schoonmaker, however, it offered to renew the 1975 FEA note on two conditions. First, the renewal note would be guaranteed by Schoonmaker personally, by Old United, and by another FEA subsidiary. Second, FEA would furnish appropriate documentation that Zions' mortgage interest in the leasehold had been properly perfected by recordation. Zions was willing to have the leasehold transferred to a new corporation, which would assume FEA's obligations to it, but was unwilling to release FEA or any of its collateral. In January 1977 representatives of FEA were advised that Zions would agree to some form of refinancing only if its security interest in the leasehold were so perfected by recording that it could obtain title insurance.

The difficulty with establishing a record mortgagee interest in Zions was twofold. First, the assignment of the 1967 lease to Old United had not been recorded. Second the 1974 lease from City Line to Old United had not been recorded. Schoonmaker proposed to record the 1974 lease and give Zions a recordable mortgage on it. Later an attorney for FEA represented to Zions that the 1974 lease could not be recorded without risking foreclosure by the owner of the fee mortgage. Nevertheless on February 16, 1977 the attorney for FEA forwarded to Zions a certified copy of a recorded leasehold mortgage. The attorney's accompanying letter noted that the firm made no

representation as to the effect of recording the leasehold mortgage. This caveat was meant to put Zions on notice that neither the assignment of the 1967 lease nor the 1974 lease was on record, and thus a bona fide purchaser might cut off Zion's interest.

In March of 1977, an officer of Zions, Grant Misbach, made several unsuccessful efforts to perfect its record security interest by having the 1974 lease recorded. Schoonmaker told Misbach that the 1974 lease could be recorded and an assignment of it to a new corporation could also be recorded, so long as the new corporation had a capitalization of at least $350,000. He once again proposed that the new corporation acquire all the assets of Old United. To accomplish that plan Schoonmaker wanted Zions to lend the new corporation $277,000 to pay off the FEA note, release FEA, release FEA accounts receivable held as collateral, release its leasehold mortgage, and take a second leasehold mortgage behind another bank. These terms were proposed by Schoonmaker in June of 1977, and were rejected by Zions. By then New United had already been incorporated with Schoonmaker as president, and had entered into an agreement with Old United to acquire Old United's assets. This information was not conveyed to Zions.

The closing on the sale from Old United to New United took place on July 1, 1977. The closing documents included:

(a) An assignment and assumption of lease, wherein Old United assigned and New United assumed the 1967 lease. Schoonmaker signed on behalf of both corporations.

(b) Several leasehold mortgages of New United's interests under the 1967 lease.

All the closing documents were recorded. Thus the closing documents purported to perfect record title to the 1967 lease in New United, and mortgages on it in several New United creditors. The trial court found that "[s]ince New United had actual and constructive knowledge of Zions' mortgage on the 1967 leasehold. New United knew that the interest assigned to it on July 1,

1977 by Old United was subject to Zions' outstanding mortgage." Finding of Fact 54. New United went into possession of 4600 City Line Avenue after the closing.

The FEA obligations to Zions remained unpaid. Zions was unaware of the July 1, 1977 closing until late December 1977, when Misbach, suspicions aroused, obtained information about New United from the Secretary of State of Pennsylvania. Meanwhile, on December 22, 1977 the 1974 lease from City Line to Old United was assigned to New United and the assignment recorded. This assignment purported to perfect New United's record title to the 1974 lease as well.

In April of 1978 Schoonmaker executed on behalf of FEA, Old United and an FEA subsidiary a renewal note to Zions for $240,000. Interest payments were paid on it until March 29, 1979. In October 1979 Zions gave notice of default and demanded payment in full. This foreclosure action followed.

## II.

In defense to the foreclosure action New United urged that Zions never obtained any enforceable lien against the leasehold at 4600 City Line Avenue. The trial court rejected this contention, observing:

I simply cannot and will not close my eyes to the fact that when it was to their advantage Old United and New United treated the 1967 lease as capable of securing corporate indebtedness.

(170A). Thus the court ordered the entry of a judgment permitting foreclosure and sale of the 1967 leasehold estate presently held by New United. (177A). The court also concluded, however, that whatever interest was created by the 1974 lease was not subject to foreclosure.

■ We hold that the facts found by the trial court amply support the decision to permit foreclosure. We conclude, however, that the court erred in excluding from that foreclosure whatever interest New United acquired by virtue of the December 22, 1977 assignment to it of the 1974 City Line-Old

United lease. The court held that City Line and Old United intended that the 1974 lease supersede that of 1967. That finding, however, lends no support to the conclusion that Old United was free to rely on the 1974 lease as a means of destroying Zions' security in the underlying leasehold. The court's findings of fact establish that in June of 1976 Zions, Old United and FEA all intended that in exchange for an extension of credit to FEA Zions would receive a security interest in the leasehold estate—the right to possession of 4600 City Line Avenue—not security interest in a useless scrap of paper. Perhaps if New United were a bona fide purchaser it could rely on deficiencies in the record title supporting Zions' recorded leasehold mortgage, but the trial court's findings of fact with respect to the ownership of New United and its complete knowledge of the facts precluded treating it as such.

Section 160 of the Restatement of Restitution provides:

> Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises.

Section 161 of the same Restatement provides:

> Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises.

Restatement of Restitution §§ 160, 161 (1937). The principles announced in these sections have been alluded to frequently by the courts of Pennsylvania as the settled law of the Commonwealth. *Yohe v. Yohe,* 466 Pa. 405, 411, 353 A.2d 417, 421 (1976); *Stauffer v. Stauffer,* 465 Pa. 558, 569, 351 A.2d 236, 241 (1976); *Buchanan v. Brentwood Federal Savings & Loan Ass'n.,* 457 Pa. 135, 151, 320 A.2d 117, 126 (1974); *Pierro v. Pierro,* 438 Pa. 119, 127, 264 A.2d 692, 695 (1970); *Chambers v. Chambers,* 406 Pa. 50, 54–55, 176 A.2d 673, 675 (1962); *Gladowski v. Felczak,* 346 Pa. 660, 31 A.2d 718, 720 (1943); *General Casmir Pulaski B & L Ass'n v. Provident T. Co.,* 338 Pa. 198, 201, 12 A.2d 336, 338 (1940); *Gee v. Eberle,* 279 Pa.Super. 101, 121, 420 A.2d 1050, 1056 (1980); *Moreland v. Metrovich,* 249 Pa.Super. 88, 97, 375 A.2d 772, 776 (1977); *Baranofsky v. Weiss,* 120 Pa.Super. 126, 131, 182 A. 47, 48 (1935); *Bell Petition,* 45 D & C 2d 725 (1968). Certainly Old United, which intended to mortgage it leasehold interest in order to obtain an extension of credit to FEA, its parent corporation, held that leasehold interest under whatever document evidenced it as a constructive trustee or equitable mortgagor for Zions. Retention of an interest in the leasehold in an action between Zions and Old United would be patently inequitable.

The assignments of either the 1967 or the 1974 leases to New United, which had full knowledge of the facts, made no change in the equities, for "[w]here a person holding property in which another has a beneficial interest transfers title to the property in violation of his duty to the other, the transferee holds the property subject to the interests of the other, unless he is a bona fide purchaser." Restatement of Restitution § 168 (1937).

We conclude, therefore, that on the facts found by the trial court the appropriate relief was an order recognizing Old United as a constructive trustee or equitable mortgagor of the entire leasehold estate in 4600 City Line Avenue, recognizing that New United took subject to the same obligations as bound Old United, and permitting foreclosure of any interests that either claimed as lessee.

### III.

What we have said in Part II disposes of New United's contention that the trial court should not have permitted any foreclosure. There remains for consideration New United's appeal from the dismissal of its charges of defamation of credit and of interference with prospective business opportunities.

■ The defamation charge was predicated upon information given by Zions to Provident National Bank in response to a credit inquiry. The trial court found that all the information given to Provident was truthful and accurate. *See* 42 Pa.Cons.Stat. Ann. § 8343(a)(1) (Purdon 1982). This finding is not clearly erroneous. The court also held that the information given to Provident was privileged, and that New United failed to prove an abuse of privilege. 42 Pa.Cons.Stat.Ann. § 8343(a)(7) (Purdon 1982). These findings are not clearly erroneous.

■ The charge of interference with a prospective business relationship requires proof of: (1) a prospective contractual relationship; (2) a purpose or intent to harm the plaintiff by preventing the relationship from occurring; (3) the absence of privilege or justification; and (4) actual damage resulting from defendant's conduct. Restatement (Second) of Torts § 766B (1979). The trial court held, and we agree, that New United produced no evidence in support of the last three elements of this tort.

## IV.

The judgment appealed from will be affirmed in all respects except the failure to enter judgment permitting Zions to foreclose on the entire leasehold estate held by New United on 4600 City Line Avenue. In that respect it will be reversed and remanded to the trial court for the entry of such a judgment.