J-S47011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF LEROY BRYAN, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: PATRICK BRYAN, EXECUTOR | : : : : : : : | |
| | : | No. 1498 WDA 2017 |

Appeal from the Order September 19, 2017
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s):  No. 26-11-0418

BEFORE:   OLSON, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 20, 2018**

Appellant, Patrick Bryan, appeals from the order entered on September 19, 2017, directing Appellant, as executor of Leroy Bryan's estate, to convey title and interest in mineral, oil, and gas rights to beneficiaries of the estate. We vacate the order.

We briefly summarize the facts and procedural history of this case as follows.  On January 22, 2010, Leroy Bryan, executed his last will and testament (without the benefit of legal counsel), naming three primary beneficiaries, Appellant, Lois Bryan (Appellant's widowed sister-in-law), and Jeannette Hariharan (Appellant's sister).  Leroy Bryan died on May 11, 2011 and Appellant was named executor on May 31, 2011.  Thereafter, Appellant transferred land and mineral rights from the estate to a limited liability company wherein Appellant was the sole shareholder.  On September 6, 2016, Appellant filed a petition for adjudication/statement of proposed distribution.

_____
* Retired Senior Judge assigned to the Superior Court.

On October 5, 2016, Lois Bryan filed objections. The trial court held a hearing on November 3, 2016. On September 19, 2017, the trial court entered the subject order directing Appellant to, *inter alia*:

> execute the necessary [d]eed to identify the property as contained in the [w]ill of the [d]ecedent, Leroy Bryan, and to fully convey the right, title, and interest in and to the mineral, oil, and gas rights in and underlying the subject property unto the heirs of the estate. The deed shall contain specific language that the percentage ownership interest in the mineral, oil and gas rights are conveyed outright unto the heirs, and their successors or assigns. All mineral, oil and gas rights other than the Leighty Well are to be conveyed to the heirs as follows: Patrick Bryan [-] 37.5%[;] Jeannette Hariharan [-] 31.25%; and, Lois Bryan [-] 31.25%. All mineral, oil and gas rights and royalties related to the Leighty Well will be conveyed as follows: Patrick Bryan [-] 45%; Jeannette Hariharan [-] 27.5%; and, Lois Bryan [-] 27.5%.

Trial Court Order, 9/19/2017, at 3 ¶11. This timely appeal resulted.[1]

On appeal, Appellant presents the following issues for our review:

1. Did the [trial c]ourt commit an error of law in finding that a devise of an income stream to an individual was, in fact, a devise to that individual and [to her] successors and assigns?

2. Did the [trial c]ourt commit an error of law in finding that the devise of product and royalties was, in fact, a devise of full ownership in the subsurface interest?

Appellant's Brief at 8.

Initially, we note that Appellant presented the above-listed issues in his Rule 1925(b) statement and in the statement of questions presented section

---

[1] Appellant filed a notice of appeal on October 15, 2017. On October 19, 2017, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a). Appellant complied timely on November 13, 2017. The trial court filed a statement in lieu of an opinion on April 18, 2018.

of his appellate brief. In the argument section of his brief, however, Appellant divided his discussion into seven sections in violation of our rules of appellate procedure. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[."]). Regardless, the seven sections of Appellant's argument present various supportive contentions relating to the two preserved, appellate issues challenging the trial court's interpretation of Leroy Bryan's will. Thus, we will examine them in a single discussion.

Appellant challenges the trial court's interpretation of "paragraph two of the subject will" which addresses "distribution of royalties from the subsurface [oil, gas, and mineral] interest[s] in a farm." Appellant's Brief at 11. That paragraph states:

> I also will the farm land of approximately 34 acres to Patrick[,] but you must promise Jeanette and Lois that you will never sell it. Pat, don't ever sell this land. It could be the salvation for this family during hard times. You could sell lots along the road (min[u]s the mineral rights) but only to family members. The land also contains all the mineral rights which I was smart enough to obtain. I was one in a million able to do this. Vicky and several lawyers told me that I would never get the gas rights and well. Gas obtained from the Leighty well now producing gas, Pat will share it with Jeanette and Lois on this basis. I will the following: Pat 60%[,] Jeanette 20%[,] and Lois 20%. Pat will provide proof of sale. Pat [receives] the higher rate because of his work with it and paying the taxes. If gas is obtained from the Marcellus or any other seam or method, then Pat will share the royalty from those sales. Those percentages will be as follows: Pat = 50%, Jeanette = 25%, [and] Lois [=] 25%. If at the end of the year it is deemed that Pat is paying more than 20% in taxes, then adjustments in Jeanette['s] and Lois['] income should be made. I'm doing the farm this way because I cannot will the farm to all of you because then it could become owned over time by many heirs and

eventually become worthless. There [are] more seams of gas below the Marcellus and some day probably will be extracted. This is my legacy to you all.

Last Will and Testament of Leroy Bryan, 1/22/2010, at 2.

Appellant contends that the trial court erred in its construction of the quoted language. Specifically, he claims that the decedent clearly intended "that [Appellant] was to own both the surface and subsurface interests and [] that the farm be kept intact (except for limited sales of specific lots to family members)." Appellant's Brief at 12. Appellant claims, "[the d]ecedent specified that his income stream(s) be divided among his son, his daughter, and his daughter-in-law." *Id.* at 13. He further argues that, "[d]ecedent's direction that the distribution of royalties be varied based upon the source of the royalties can be implemented only by distribution of the income during the lives of the beneficiaries." *Id.* at 15. Appellant claims that Leroy Bryan expressed no intention of separating surface and subsurface interests in the land. *Id.* at 16. Appellant suggests "the [c]ourt below transformed the specific bequests of shares in the various income streams (with varying distribution shares) into bequests of fee simple title [and, thereby], extended the lifetime gift of income to [the] heirs, successors, and assigns [of designated beneficiaries, Lois Bryan and Jeanette Hariharan.]" *Id.* at 19.

Our standard for reviewing an Orphans' Court findings is deferential:

The findings of a judge of the [O]rphans' [C]ourt division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which

- 4 -

are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

When the [Orphans' C]ourt has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous.... If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an [O]rphans' [C]ourt decree only if the [O]rphans' [C]ourt applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Estate of Warden*, 2 A.3d 565, 571 (Pa. Super. 2010) (citations omitted).

Concerning will interpretation, this Court has previously determined:

It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will

- 5 -

is ambiguous or conflicting or the testator's intent is for any reason uncertain.

Thus, the primary goal of the construing court is to effectuate the intent of the testator. In order to ascertain the testamentary intent, a court must focus first and foremost on the precise wording of the will, and if ambiguity exists, on the circumstances under which the will was executed. The words of a will are not to be viewed in a vacuum, and specific words or phrases will be rejected when they subvert or defeat the testator's whole testamentary scheme and divest the bounty from those whom he obviously intended to benefit. The interpretation of a will is a question of law, and thus our standard of review is de novo and our scope of review is plenary.

***Murphy v. Karnek***, 160 A.3d 850, 861–862 (Pa. Super. 2017) (internal citations and quotations omitted).

The trial court first recognized that the will did not authorize Appellant to create a limited liability corporation to manage the royalties from gas and oil leases on the subject land. Trial Court Statement in Lieu of Opinion, 4/18/2018, at 4. The trial court found that Appellant's limited liability company "was not an authorized method of distributing the gas royalties [under the will] because it would leave the other heirs, Jeanette and Lois, with no enforceable property interest in future wells." ***Id.*** at 5. Instead, "it was [the trial] court's interpretation that the testator intended a permanent division of the future gas royalties, and that the only way to effectuate that intention was to treat it as a devise of real estate [to Appellant's co-beneficiaries, Jeanette and Lois]." ***Id.*** at 3. Thus, the trial court "determine[d] that a devise of the mineral rights in percentage shares was the best [it] could do to honor the testator's poorly drafted amateur will." ***Id.***

- 6 -

at 4. Moreover, the trial court noted that it appeared that the decedent wanted to treat all three heirs equally, despite a specific devise of $50,000.00 to Appellant as executor (as set forth in another, uncontested provision of the will) and a larger percentage of oil and gas royalties for Appellant to pay "taxes." *Id.* at 5. However, the trial court recognized that there were "no **real estate** taxes levied on gas in the ground because it is fugacious and cannot be located or assessed" and that "each heir is fully capable of paying their own **income** taxes on their individual share of the royalties." *Id.* (emphasis in original). Thus, the trial court slightly modified the percentage of royalties Appellant was to receive, with him still receiving a larger percentage of royalties than the other beneficiaries.[2] *Id.* at 5-6. The trial court concluded that its interpretation of the subject will "was the result of a concerted effort to follow the intentions of the testator without blindly accepting [Appellant's] selfish and unfair interpretation." *Id.* at 6. Upon review, we discern the trial court erred in construing the subject will.[3]

Here, the will unambiguously provides that Appellant was to receive sole ownership of the farm property and its subsurface mineral rights. There is no dispute that Appellant was to receive "the farm land of approximately 34 acres

---

[2] None of the parties challenges the percentages allocated by the trial court.

[3] Initially, we note that the trial court did not cite any legal authority in support of its order or subsequent statement in lieu of an opinion. Nevertheless, from our examination of the record and applicable law, we are able to address thoroughly the issues raised on appeal.

deed[ed] to [Appellant]." Last Will and Testament of Leroy Bryan, 1/22/2010, at 2. The will directs that Appellant receive the land, with the proviso that he promise to Jeanette and Lois that he would not sell it. The decedent unequivocally states that he did not want the property to be diluted or subdivided over time by subsequent heirs. The will then states that "the land **also** contains all the mineral rights[.]" *Id.* (emphasis added). When all of the provisions are read in conjunction, the decedent clearly gave Appellant all of the farmland, which also contained the subsurface mineral rights. The specific language twice directing that Appellant **share** the royalties generated with Jeanette and Lois, and provide them with proof of sales, further supports such interpretation. When read together, the unambiguous provisions of the will gave Appellant sole ownership interest in the surface and subsurface of the deeded property.[4] There is simply no language in the will that suggests the decedent intended to devise separate ownership interests in the mineral estate to Jeanette and Lois. Accordingly, the trial court erred when it determined that the testator intended a permanent division of future gas royalties that required a distribution of separate ownership interests to Appellant, Jeanette, and Lois. In short, the trial court's assessment was contrary to the testator's intent, as gathered from the plain, unambiguous language of the will and the scheme of distribution thereunder.

_____

[4] As such, we reject the trial court's contention that Leroy Bryan "want[ed] to treat all three heirs [(Appellant, Jeanette, and Lois)] equally[.]' Trial Court Statement in Lieu of Opinion, 4/18/2018, at 5.

In turn, the trial court erred by amending the royalty percentages allotted to the three named beneficiaries. The testator provided clear and unambiguous direction that Appellant was to receive 60% of the proceeds (with the remaining 40% to be split by Jeanette and Lois) from a well already producing gas, designated as the Leighty well. With regard to future, yet unknown royalties obtained by other extraction methods, the will directed that Appellant receive 50% of them and that Jeanette and Lois are each to receive a 25% interest. While the will further directs Appellant to make tax adjustments to royalties to Jeanette and Lois as he deems necessary, it is of no moment if the decedent was mistaken as to whether real estate or income taxes apply to the individual shares of the royalties. Since future tax adjustments are speculative at this stage, it is premature for the trial court to adjust the allotted percentages on its perceived notions regarding potential tax consequences. Instead, the three named beneficiaries are entitled to their plainly delineated percentage of gas and oil royalties as clearly set forth in the will.

Moreover, it was erroneous for the trial court to determine that, without dividing the property, Jeanette and Lois would have no enforceable future interests in the oil and gas royalties. Upon review of the record, the trial court held a hearing on objections to the proposed distribution on November 3, 2017. Counsel for Appellant stated that Jeanette and Lois have "received their specified percentages of the royalties and the signing bonus that was received [and that Appellant was] not holding those funds, they've been

distributed." N.T., 11/3/2016, at 17. Jeanette and Lois did not dispute their receipt of royalties. When the trial court stated its disapproval of Appellant's use of a limited liability company to manage the royalties, counsel for Appellant stated that he "certainly would have no objection to doing it through a trust." *Id.* at 17. The trial court rejected that notion, stating, "the [w]ill doesn't talk about a trust." *Id.* The trial court then opined that there "are only two options that [] are normally [available in the] distribution of an estate[:] leave [the property] in the [e]state or [] make a deed." *Id.* We conclude this was in error.

As previously discussed, the plain language of the will states that Appellant must share oil and gas royalties with Jeanette and Lois and provide them with proof of production sales. The language appears to create a trust. *See In re Church Of St. James The Less*, 888 A.2d 795, 809 (Pa. 2005), *citing* RESTATEMENT (SECOND) OF TRUSTS § 2 (defining trust as "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person"); *In re: Evans' Estate*, 93 A.2d 683, 685 (Pa. 1953) (no special form of terminology is necessary to create a trust, "nor is the absence of the word 'trust' controlling"). We have previously determined:

> if the trustee commits a breach of trust, he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or (b) any profit made by him through the breach of trust; or (c) any profit which would have accrued to the trust estate if there had been no breach of trust.

- 10 -

***Dentler Family Trust***, 873 A.2d 738, 745 (Pa. Super. 2005), *quoting* Restatement (Second) of Trusts § 205).

Moreover, a court may impose a constructive trust as an equitable remedy to prevent unjust enrichment. ***See Moreland v. Metrovich***, 375 A.2d 772, 776 (Pa. Super. 1977). The "theory of constructive trusts does not require an equity court to find an intention or agreement to create a trust; instead, a court may impose a constructive trust as a remedy to prevent the unjust enrichment of one party." ***Id.*** Thus, we reject the trial court's suggestion that there were no future equitable remedies available to Jeannette and Lois.[5] Based upon our review, we discern no ambiguity in the language of the will and, therefore, conclude that the trial court erred in finding as such.

Finally, even if, as the trial court found, ambiguities existed in the will, the trial court erred in failing to resort to the canons of will construction. A court should resort to the canons of will construction where the testator's intent does not appear with reasonable certainty. ***See Estate of Houston***, 421 A.2d 166, 169 (Pa. 1980).

We have previously determined:

> A life estate is defined as an estate whose duration is limited to the life of the party holding it, or some other person. A life estate arises when a conveyance or will expressly limits the duration of the created estate in terms of the life or lives of one or more persons, or when the will or instrument creating the interest,

---

[5]  We note, as mentioned above, that Jeannette and Lois are not currently complaining that they are not receiving their allotted percentage of the oil and gas royalties. We only mention potential avenues of recourse in response to the trial court's determination that none is available.

viewed as a whole, manifests the intent of the transferor to create an estate measured by the life or lives of one or more persons.

*          *          *

[T]he use of any particular phrases or words of art is not required in order to create or reserve a life estate.

***In re Paxson Trust I***, 893 A.2d 99, 115 (Pa. Super. 2006) (internal citations and quotations omitted).

Here, the will directs that Appellant receive the property in its entirety and manage the oil and gas royalties generated therefrom. Jeanette and Lois are entitled to a percentage of those royalties. While the will does not specifically state that Jeannette and Lois are to receive "life estates," there is simply no reference to their heirs, assigns, or any future beneficiaries.[6] Applying the above-quoted canon of will construction, the trial court should have concluded that the conveyances to Jeanette and Lois were measured solely in terms of their lifetimes and, therefore, they were entitled only to life estates in the oil and gas royalties generated from the subject property. Hence, assuming the will was ambiguous, the canons of construction further support our interpretation that the decedent intended that Jeanette and Lois receive life estates in the oil and gas proceeds.

_____

[6]   In describing the oil and gas royalties, the will states "[t]his is my legacy to you all." The trial court suggests that such language refers to future heirs of Jeanette and Lois. ***See*** Trial Court Statement in Lieu of Opinion, 4/18/2018, at 3. However, when read in context, the entire paragraph only addresses Appellant, Jeanette, and Lois. Thus, the "legacy" referred to applies only to those three named beneficiaries and, the will, read as a whole, supports our interpretation that life estates were created in Lois and Jeanette.

Order vacated.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/20/2018</u>